UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OHIO FARMERS INSURANCE CO.,

       Plaintiff,

v.                              CASE NO.: 8:10-CV-1948-T-33MAP

STEPHAN C. NESTAL, and MARETA C.
NESTAL,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

       Before the Court is Defendants' Motion to Dismiss Amended Complaint and Motion to

Strike Request for Fees and Costs (doc. 16) and Plaintiff's response thereto (doc. 18), and the

parties' memoranda of law regarding conflicts of law principles (docs. 24 and 26).  For the

reasons set forth below, I recommend that the motion to dismiss amended complaint (doc. 16) be

granted with respect to the claims against Mareta Nestel, and denied in all other respects.

       *A.    Standard of review*

       *Rule 12(b)(6)*

       The Federal Rules of Civil Procedure generally do not require a plaintiff to set out in

detail the facts upon which he bases his claim.  Instead, all that ordinarily is required is that the

claimant set forth a "short and plain statement of his claim showing that the pleader is entitled to

relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon

which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 555 (2007) citing *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957); Fed.R.Civ.P. 8(a)(2).  Hence, while a plaintiff attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, he is obliged to

provide the "grounds" of his "entitlement to relief," more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"Factual allegations must be enough to raise [the claimant's] right to relief above the speculative

label on the assumption that all of the complaint's allegations are true." *Id.* (citations omitted).

    *B. Background*

    According to the amended complaint, the Plaintiff, Ohio Farmers Insurance Company

("Ohio Farmers"), an Ohio corporation with its principal place of business in Ohio, is the

construction surety responsible for issuing payment and/or performance bonds on behalf of S.C.

Nestel, Inc., a corporation organized and registered in Indiana that does work in the construction

industry.  In 1995, S.C. Nestel requested Ohio Farmers to serve as its construction surety,

securing S.C. Nestel's performance obligations on various construction projects on an on-going

basis.  As a condition precedent to Ohio Farmers issuing any payment or performance bonds on

S.C. Nestel's behalf, Stephan Nestel, a shareholder of S.C. Nestel, entered into a Subchapter S

Corporation Shareholders Covenant (the "Contract") with Ohio Farmers.  Ohio Farmers alleges

that in issuing various payment and performance bonds, it relied on Stephan Nestel's

representation that he executed the Contract on behalf of himself and his wife, Mareta Nestel.

    On or about June 8, 2010, Ohio Farmers satisfied a judgment in the amount of

$3,855,510.45.  This judgment was entered against Ohio Farmers by virtue of a bond it issued for

a construction project S.C. Nestel was performing for Wal-Mart (the "Wal-Mart Contract").

Ohio Farmers paid additional claims and expenses totaling $3,064,028.03 on behalf of S.C.

Nestel.  In satisfying these claims, Ohio Farmers sustained a "loss."

    On September 2, 2010, Ohio Farmers filed its initial complaint which was later amended

on November 5, 2010, after Ohio Farmers issued a written demand for indemnification from Stefan and Mareta Nestel (the "Nestels") on October 27, 2010.  Ohio Farmers now seeks to recover against the Nestels on the theory of breach of contract (Count I), specific performance (Count II), and fraudulent transfers (Count III).  Relying on financial statements received from S.C. Nestel, Ohio Farmers alleges that the Contract was breached because as of December 31, 2005, S.C. Nestel's net worth was $330,345.00.  Ohio Farmers also alleges that the Nestels breached the Contract by approving one or more distributions and/or withdrawals of funds which caused S.C. Nestel's net worth to fall below $1,200,000.00.

As to its fraudulent transfers claim, Ohio Farmers asserts that the Nestels received assets and/or property totaling approximately $2,494,771.00 during the year 2005 with knowledge that S.C. Nestel faced liability in excess of $3,000,000.00 for breaching the Wal-Mart Contract.  In addition, Ohio Farmers alleges that the Nestels have not complied with Ohio Farmers' demand for indemnification.

The Nestels now move to dismiss Counts I, II, and III of the amended complaint against Mareta Nestel arguing that she is not a party to the Contract.  Additionally, the Nestels argue that this action should be dismissed because Ohio Farmers' failed to comply with a condition precedent when it filed suit on September 2, 2010, before making demand for indemnification. The Nestels also move to dismiss the specific performance cause of action alleging that adequate remedies are available at law.  The Nestels also argue for the dismissal of Count III because Ohio Farmers failed to meet the pleading requirements and failed to name S.C. Nestel who is an indispensable party.  In addition, the Nestels request that this Court strike Ohio Farmers' request for attorneys fees.

*C. Discussion*

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state to determine the substantive law to be applied in the case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *American Family Life Assur. Co. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941)). Under Florida conflicts of law principles, matters concerning the validity and substantive obligations of contracts are determined by the law of the place where the contract is made, *lex loci contractus. LaFarge Corp. v. Travelers Indemnity* Co., 118 F.3d 1511 (11th Cir. 1997) *citing Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974). The doctrine of *lex loci contractus* directs that, in absence of a contractual provision specifying the governing law, a contract (other than one for performance of services) is governed by the law of the state in which the contract is made, i.e. where the last act necessary to complete the contract is done. *Fioretti v. Massachusetts General Life Ins. Co.*, 53 F.3d 1228 (11th Cir. 1995) *citing Equitable Life Assurance Society of the U.S.A. v. McRee*, 78 So. 22, 24 (1918). Here, the parties agree that the Contract was fully executed and delivered in the State of Indiana, and therefore, Indiana law governs the interpretation and construction of the Contract. In a choice of law context, Florida maintains the traditional distinction between substantive and procedural matters: courts apply the foreign law to resolve substance of the case and will apply forum's law for procedural matters. *Siegal v. Novak,*, 920 So. 2d 89 (Fla. 4th DCA 2006). Hence, this Court will apply the law of the forum, Florida, in determining whether Ohio Farmers has failed to state a claim for specific performance, whether Ohio Farmers' alleged failure to comply with a condition precedent to enforcement of the Contract should prevent Ohio Farmers from seeking recovery on the Contract,

4

whether a claim under the Uniform Fraudulent Transfers Act should be dismissed for failure to name an indispensable party, and whether Ohio Farmers failed to meet minimum pleading requirements in Count III.

### 1. Claims against Mareta C. Nestel

Nestels seek dismissal of the claims against Mareta C. Nestel because all of the claims against her (for breach of contract, specific performance, and fraudulent transfers, Counts I, II, and III, respectively) arise from the Contract to which she was not a party.[1]  The Nestels further assert that since Ohio Farmers has not pled facts indicating it reached mutual assent with Mareta C. Nestel nor pled facts establishing that either Mareta C. Nestel designated her husband as her agent, or that her husband possessed apparent authority to act on her behalf, the claims against her should be dismissed.  In response, Ohio Farmers states that the Contract (attached as exhibit to the amended complaint and incorporated therein) entered into by Stephan Nestel provides:

> A shareholder shall mean any person or entity having an ownership interest in [S.C. Nestel] and shall include the spouse, assigns and successors in interest of such person or entity.

Contract, ¶6.

Applying Indiana law, in order to form a binding contract or agreement with a particular party, mutual assent or a meeting of the minds must occur on all essential elements or terms. *Indiana Dept. of Correction v. Swanson Services Corp.,* 820 N.E. 2d 733, 737 (Ind. App. 2005) citing *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 455 (Ind. 1982).  Contractual obligations are personal in nature and privity of contract is essential for establishing contractual

---

[1]  While a claim for fraudulent transfer may be brought pursuant to Fla. Stat. § 726.108, the Nestels state that the Plaintiff's claim for fraudulent transfer incorporates allegations regarding contractual liability.

liability.  *See DiMizio v. Roma*, 756 N.E.2d 1018, 1021-22 (Ind. App. 2001) (finding seller of

restaurant could not maintain breach of contract action against buyer's wife where wife was not a

party to the contract); *McIntosh v. Turner*, 486 N.E.2d 565, 566 (Ind. App. 1985) (finding

relationship as husband and wife does not in itself create agency and concluding that wife who

did not sign agreement was not bound by it).  Moreover, Indiana law provides that "there can be

no agency based upon apparent authority absent some communication, direct or indirect, by the

principal to the third party, instilling a reasonable belief in the mind of the third party of such

agency relationship.  Statements or manifestations made by the agent are insufficient to create an

apparent agency relationship." *Jarvis Drilling Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d

821, 826 (Ind. App. 1993).

Ohio Farmers alleges only that it relied on Mr. Nestel's representation that he executed

the Contract on behalf of himself and his wife.  *See* Amended Complaint, ¶ 26.  The amended

complaint, however, lacks any allegations establishing direct or indirect authority forming an

agency.  Acts of the agent alone, however, are insufficient to establish that an agent is authorized

to act for the principal.   At best, Ohio Farmers posits that although no evidence is available now

showing that Mrs. Nestel gave her husband authority to sign the Contract on her behalf, through

discovery Ohio Farmers may be able to prove she took action giving her husband authority to

bind her under the Contract.

Upon consideration, I conclude that based on the allegations in the amended complaint

Mr. Nestel cannot be held liable for breach of contract because she was not a party to the

Contract.  Moreover, the amended complaint contains no allegations establishing that Mr. Nestel

acted as his wife's agent, or that Mrs. Nestel manifested an intent to be bound by the Contract

6

terms.  Ohio Farmers therefore has failed to plead sufficient facts establishing that Mr. Nestel

was acting with requisite authority to bind his wife when he entered into the Contract.  Mrs.

Nestel is not a party to the Contract and there are no allegations indicating that Mrs. Nestel gave

Mr. Nestel authority to bind her when he entered into the Contract that raise its "right to relief

above the speculative level." *Twombley, supra,* 550 U.S. at 555.  Moreover, because counts II

and III are based upon the Contract and the obligations arising therein, dismissal of Mareta

Nestel with regard to counts II and III for specific performance and fraudulent transfers is also

appropriate.

*2.   Demand for indemnification*

The Nestels assert that the Contract, at paragraph 7, required Ohio Farmers to "demand

reimbursement" prior to filing suit against them.  Since the time Ohio Farmers filed their original

complaint instituting litigation against the the Nestels, it has issued a written demand for the

Nestels to indemnify it and honor their obligations under the Contract. The Nestels seek entry of

an order dismissing this action as a result of Ohio Farmers' failure to make a demand on the

Nestels prior to filing this action.  In response, Ohio Farmers disputes that the Contract required

written demand for indemnification, and states that there is no legal basis that Ohio Farmers

should have issued its indemnity demand earlier than it did, especially in light of the fact that the

Nestels had not satisfied their obligations when they received the demand letter.

Review of the Contract reveals that the language relied upon by the Nestels provides:

> Shareholders agree that in the event of the breach of any of the
> terms of this Agreement, all funds and the value of any property
> and any benefit received by the Shareholders in connections with
> such breach shall be held in trust by Shareholders for the benefit of
> Surety to be paid by Shareholders to Surety on demand in

7

reimbursement of its loss.  Shareholders further agree to
compensate Surety for any damage in the form of loss or otherwise,
sustained by it and caused or contributed to by such breach.

Contract, ¶ 7.

Upon consideration, I find that although the Nestels would like the Court to conclude that

the Contract clearly requires that Ohio Farmers make a written demand for reimbursement prior

to filing the instant action, I cannot agree.  The Contract language does not clearly require that

Ohio Farmers make a written demand, and it is premature at this early juncture to conclude that

Ohio Farmers failed to perform any required conditions precedent.  Moreover, I find the cases

cited by the Nestels factually distinguishable from this one, and legally inapplicable here.

### 3.  Specific performance

The Nestels state that Ohio Farmers has failed to state a claim for specific performance

because the facts as pled in the amended complaint illustrate that Plaintiff has an adequate

remedy at law.  In response, Ohio Farmers indicates it seeks specific performance as an

alternative relief, and that this Court's analysis should be limited to whether it plausibly has

alleged that it does not have an adequate remedy at law.  The Federal Rules of Civil Procedure

permit alternative pleading, and therefore, I recommend that the motion to dismiss be denied as

to Count II.  *See* Fed.R.Civ.P. 8(a)(3) (relief sought "may include relief in the alternative or

different types of relief"); Fed.R.Civ.P. 8(d)(3) ("A party may state as many separate claims or

defenses as it has, regardless of consistency"); *Adelphia Cable Partners, L.P. v. E & A Beepers

Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) (Federal Rules of Civil Procedure "do not prohibit

the pleading of an equitable remedy alongside a claim for monetary remedy ... Although the

equitable relief ultimately may not be awarded where there exists an adequate remedy at law,

Plaintiff certainly may plead alternative equitable relief.").

When considering a Rule 12(b)(6) motion, a court must determine whether the factual allegations, taken in the light most favorable to the plaintiff, raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  However, a court is not required to accept plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. (2009).  Evaluating the sufficiency of Plaintiff's claim for specific performance, this Court will apply the law of the state of Indiana. *See Liberty Mut. Ins. Co. v. Aventura Engineering & Constr. Corp.,* 534 F.Supp.2d 1290 (S.D. Fla. 2008) (finding that Florida's choice of law rule governing validity and interpretation of contracts looks to law of place of contracting and law of place of performance). "To be specifically enforceable a contract must be clear, certain and definite in all its material provisions ... More certainty is required in a contract where specific performance is invoked than is required where the remedy is sought at law by way of damages, and where there is ambiguity, doubt or uncertainty with respect to the contract, equitable enforcement by specific performance will be denied and the parties will be left to their remedies at law." *Neel v. Cass County Fair Ass'n.*, 240 N.E.2d 546, (Ind. App. 1968).   "Moreover, it must appear that the plaintiff has no adequate remedy at law and that to refuse to perform the contract would be fraud upon him." *Neel,* 240 N.E.2d at 551 (citations omitted).  Count II of the amended complaint indicates that the Contract requires the Nestels to "Indemnify Ohio Farmers for its losses up to the amount set forth in the Contract; Hold in trust for the benefit of Ohio Farmers all funds and the value of any property and any benefit received by the Nestels in connection with any breach of the Contract; Compensate Ohio Farmers for any damage sustained by Ohio Farmers which the Nestels caused or contributed to by breaching the Contract."  The amended complaint further alleges that On

9

October 27, 2010, Ohio Farmers issued a written demand for the Nestels to indemnify Ohio

Farmers, to hold funds in trust for Ohio Farmers' benefit, and to compensate Ohio Farmers for

the damages it has sustained, that the Nestels have not complied with their obligations under the

Contract, including the obligation to indemnify Ohio Farmers, to hold funds in trust for Ohio

Farmers' benefit, and to compensate Ohio Farmers for the damages it has sustained. I find that

the allegations establish Plaintiff's entitlement to a particular right under the Contract. *See*

*generally Frontier Ins. Co. v. Hitchcock*, 406 Fed. Appx. 78 (7th Cir. 2011) (entering a judgment

of specific performance in favor of surety and against indemnitor on indemnitor's obligations to

deposit funds to meet liability on surety bond); *Safeco Insurance Co. of America v. Tarragon*

*Corp.*, 2008 WL 4279691 (M.D. Fla. 2008) (denying motion to dismiss insurer's claim for

specific performance against indemnitor because the complaint clearly alleged that Safeco has no

adequate remedy at law to enforce its rights, because the indemnity agreement specifically

allowed such a claim, and because alternative pleading is permitted under the federal rules)

(applying Florida law); *Travelers Casualty and Surety Co. of Florida v. Grace & Naeem Uddin,*

*Inc.*, 2009 WL 1024239 (S. D. Fla. 2009) (rejecting defendant indemnitor's argument that the

specific performance claim should be dismissed because plaintiff has an adequate remedy at law

and denying indemnitor's motion to dismiss plaintiff surety's claim for specific performance on

performance bond) (applying Florida law).

A surety is entitled to stand on the language of an express indemnification agreement. An

indemnity agreement should be construed to cover all losses and damages to which it reasonably

appears the parties intended to apply. Moreover, courts recognize the equitable remedy of

specific performance of the collateral security obligation of an indemnity agreement. *Far West*

*Ins. Co. v. Metro Excavating, Inc.*, (N.D. Ind. 2008). (applying Indiana law). Accordingly, I find

that Ohio Farmers has sufficiently stated a claim for specific performance and recommend that

the motion to dismiss this claim be denied.

### 4. *Indispensable party*[2]

In Count III, Ohio Farmers alleges S.C. Nestel and/or the Nestels made the allegedly

fraudulent transfers. *See* amended complaint, ¶ 47. In light of these allegations, the Nestels

assert that S.C. Nestel is an indispensable party, as it is materially interested in the subject matter

of a suit and would be directly affected by an adjudication of the controversy.

The appropriate rule is Rule 12(b)(7) which allows dismissal for "failure to join a party

under Rule 19." Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19" and

Rule 19 provides for joinder of all parties whose presence in a lawsuit is required for the fair and

complete resolution of the dispute at issue. Rule 19 is a two-step inquiry. First, I must decide

whether the party is a "required" party pursuant to Rule 19(a). If so, then I must decide whether

the party can feasibly be joined. If they are required parties but cannot be joined (because they

are non-diverse) Rule 19(b) provides a list of factors for me to consider to determine whether, "in

equity and good conscience, the action should proceed among the existing parties or should be

dismissed." The factors include: 1) the extent to which a judgment rendered in the person's

absence might prejudice that person or the existing parties; 2) the extent to which any prejudice

---

[2] In a diversity case, such as this one, state substantive law governs in determining rights
and interests of all concerned, and after those rights and interests have been ascertained by state
law, federal court will determine indispensability of a party according to its own rules, taking
into consideration whether justice can be done and complete relief afforded, dependent upon the
substantive rights created by the forum state. *See Jett v. Zink*, 362 F.2d 723 (5th Cir. 1966).

could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures;  3) whether a judgment rendered in the person's absence would be adequate; and 4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.  These factors determine whether the person is indispensable.  If so, the court must dismiss the litigation.  If the person is not indispensable, the case may continue without joinder.

Per Rule 19(a), the first question is "whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations."*City of Marietta v. CSX Transp. Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999) (finding non-party Georgia had practical interests at stake even though it would not be bound by a judgment in the case in the sense that by adjudicating CSX's rights the court may be adjudicating Georgia's rights too). In making this determination, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1280 (11th Cir. 2003) quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.* 669 F.2d 667, 669 (11th Cir. 1982).   Here, Ohio Farmers alleges in the amended complaint that "S.C. Nestel and the Nestels are debtors and are jointly and severally liable to Ohio Farmers for certain obligations arising from or relating to Ohio Farmers' issuance of Bonds on behalf of S.C. Nestel."  Amended complaint, ¶ 43.  Ohio Farmers further alleges that it received S.C. Nestel's financial statements and those records reflected that the Nestels received transfers of $2,494,771.00, and that S.C. Nestel and/or the Nestels made such transfers a) with the intent to hinder, delay, or defraud the creditors of S.C. Nestel, including Ohio Farmers, because the Nestels knew that S.C. Nestel faced liability in excess of $3,000,000.00 for its breach of

contractual obligations on the Wal-Mart project when they made the transfers; b) without receiving a reasonably equivalent value in exchange and that the remaining assets of S.C. Nestel were unreasonably small in relation to the business or transaction and that S.C. Nestel intended to incur or believed or reasonably should have believed that S.C. Nestel would incur debts beyond its ability to pay as the debts became due because its net worth was less than its expected liability for breaching its contractual obligations on the Wal-Mart project; and c) without receiving reasonably equivalent value in exchange for them and that S.C. Nestel became insolvent as a result.  *See* amended complaint, ¶¶ 46- 47.  Moreover, while the relief requested in Count III does not blatantly request relief directly from S.C. Nestel, Ohio Farmers requests this Court to enter an order "avoiding the Nestels' fraudulent transfers of S.C. Nestel's assets and/or property," attaching or restricting the funds that were transferred, enjoining the Nestels from exercising their rights as shareholders of S.C. Nestel and from approving further distributions of S.C. Nestel's assets and/or property.  Essentially, Ohio Farmers alleges in Count III that S.C. Nestel and the Nestels were joint obligors, and may have transferred funds to the Nestels and did so with the intent to hinder, delay or defraud S.C. Nestel's creditors, including Ohio Farmers.  In light of these allegations, I find that S.C. Nestel has practical interests at stake and will be affected by the outcome of this action.  *See generally Brakin Tie, Lumber & Chip Co v. McLarty Farms, Inc.*, 704 F.2d 585, 586-87 (11th Cir. 1983) (endorsing distinction between obligor and obligee in evaluating whether absent joint obligor was indispensable party under Rule 19); *William A. Gross Const. Assoc. Inc. v. American Manufacturers*, 2008 WL 427280 (S.D.N.Y. 2009) (surety context, "it is well-settled that co-obligors to an agreement are generally not indispensable parties" and concluding that in equity and good conscious Cauldwell (the

contractor) is not indispensible);   *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d

399, 408 (1st Cir. 1993) ("joint obligors thus are treated as Rule 19(a) parties, but are not deemed

indispensable under Rule 19(b)).

Rule 19(b) next requires consideration of whether "in equity and good conscience" this

action should continue without S.C. Nestel.[3]  In considering the first factor, the extent to which a

judgment rendered in the person's absence might prejudice that person or the existing parties, I

note that Mr. Nestel's liability to Ohio Farmers is derived from the Contract and his alleged

---

[3]A relevant issue in determining whether S.C. Nestel is an indispensable party under Rule 19(b) is determining the viability of S.C. Nestel, a dissolved corporation.  While indispensability is an issue determined by federal law, state law will define the substantive rights of the parties and the interests concerned.  *Provident Bank & Trust Co. v. Patterson,* 390 U.S. 102, 123 n.22 (1968).  The law of the state of incorporation applies in determining the viability of a corporation after dissolution.  *See generally In re Bercu*, 293 B.R. 806 (M.D. Fla. 2003) ("It is uniformly recognized that the right of a corporation to sue is governed by the State of incorporation").  S.C. Nestel, an Indiana corporation, was voluntarily dissolved effective December 31, 2010.  *See* doc. 26-1, Certificate of Dissolution.  Indiana Code § 23-1-45-3(b) provides that "A corporation is dissolved upon the effective date of its articles of dissolution." Indiana Code § 23-1-45-5(b) provides that "Dissolution of a corporation's property does not: ... (5) prevent commencement of a proceeding by or against the corporation in its corporate name." Indiana Code § 23-1-45-6 requires a dissolved corporation to follow a particular procedure for notifying known claimants in writing of its dissolution, and allows the dissolved corporation to fix a deadline for filing claims which may be no fewer than sixty days after the effective date of the written notice.  A dissolving corporation is not required to follow section 6's procedures for disposing of known claims, however if it does not, the claims will then be subject to the two-year limitations period established by Indiana Code § 23-1-45-7.  Indiana Code § 23-1-45-7(b)(3) establishes a two-year limitations period if the dissolved corporation publishes a newspaper notice of its dissolution pursuant to the Code's requirements set forth in Indiana Code § 23-1-45-7(b).  *But see Bernstein v. Bankert*, 698 So. 2d 1042 (S.D. Ind. 2010) (under Indiana law, a corporation administratively dissolved may not benefit from the two-year statute of limitations for voluntarily dissolved corporations because no notice of its dissolution was given to its creditors).

Assuming S.C.Nestel followed the notification procedures described above, and assuming that it did not notify Ohio Farmers pursuant to Indiana Code § 23-1-45-6 and set forth a fixed deadline for filing a claim against it, then the two-year limitations period applies and S.C. Nestel is amendable to suits for two years from the date of its voluntary dissolution, December 31, 2010.

receipt of fraudulent funds.  S.C. Nestel is not a party to the Contract, and did not receive any

funds.  Hence, divestment of funds is not a possibility.  Thus, this factor weighs against finding

S.C. Nestel indispensable.

The second and third factors, the extent to which any prejudice could be lessened or

avoided by protective provisions in the judgment, shaping the relief, or other measures, and

whether a judgment rendered in the person's absence would be adequate, also weigh against

finding S.C. Nestel indispensable.  I cannot foresee any prejudice to S.C. Nestel.  Nonetheless, I

do not foresee a need to provide protective measures.  And, I don't foresee how a judgment

rendered in S.C. Nestel's absence could be detrimental to S.C. Nestel or any other entity or

person.

Finally, the fourth factor, whether the Plaintiff would have an adequate remedy if the

action were dismissed for non-joinder, also weighs in favor of proceeding in this forum without

S.C. Nestel.  As counsel stated during the hearing on this matter, Plaintiff could proceed against

S.C. Nestel in Indiana state court.  All of the Rule 19(b) factors point toward proceeding in S.C.

Nestel's absence.  Moreover, the Eleventh Circuit holds that the moving party has the burden "to

show the nature of the unprotected interests of the absent party."  *West Peninsular Title Co. v.*

*Palm Beach County*, 41 F.3d 1490, 1492 (11th Cir. 1995) quoting 5A Wright & Miller, Federal

Practice and Procedure § 1359.  In support of its argument that S.C. Nestel is indispensable, the

Nestels fail to cite to Rule 19 or attempt to analyze the factors outlined in Rule 19(b), and state

only: "Clearly, Ohio Farmers has included allegations against S.C. Nestel and asked for relief

which would affect the rights of S.C. Nestel.  Therefore, S.C. Nestel is an indispensable party to

Count III of the Amended Complaint."[4]  I find that the Nestels have not met their burden of showing that S.C. Nestel is a necessary and indispensable party, and conclude that the Rule 19(b) factors weigh in favor of proceeding without S.C. Nestel.

### 5. Fraudulent transfers

The Nestels maintain that Count III fails to satisfy the pleading requirements of Fed.R.Civ.P. 8.  Specifically, the Nestels state that Ohio Farmers has failed to explain why it believes the Nestels knew that S.C. Nestel faced liability for breach of contractual obligations on the WalMart Project given the facts that it claims the allegedly fraudulent transfers occurred in 2005 and WalMart did not obtain judgment until June 8, 2010.  In response, Ohio Farmers asserts that the Nestels intended to hinder, delay, or defraud creditors of S.C. Nestel, including Ohio Farmers, because the Nestels knew that S.C. Nestel faced liability in excess of $3,000,000.00 for breach of its contractual obligations on the Wal-Mart Project when they made the transfers.

Florida's Uniform Fraudulent Transfer Act (FUFTA) was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors.[5]  Fla. Stat. §726.101 *et seq*.

_____

[4] Ohio Farmers relies on the case of *Martinez v. Balbin*, 76 So. 2d 488, 490 (Fla. 1954), for the proposition that a recipient of a fraudulent transfer is an indispensable party where they are charged with participation in the fraud.  Here, however, S. C. Nestel is not a recipient of any fraudulent transfers, the Nestels are the purported recipients.  Moreover, S.C. Nestel is not a party to the Contract pursuant to which the Nestels agreed to maintain S. C. Nestel's net worth at a designated level and agreed not to distribute, withdraw or permit the net worth to fall below the designated amount.

[5] The allegations in count III of the amended complaint do not refer to the Florida Statutes, or to any other statute.  The parties' memoranda in support of and in opposition to the motion to dismiss discuss that count III arises from alleged violations of Florida's Uniform Fraudulent Transfer Act, codified at Fla. Stat. Ch. 726, and upon examination I find that the

To state a claim for violation of FUFTA, the allegations must include specific facts about fraudulent transfers sufficient to notify defendants.  *See Twombly, supra,* 550 U.S. at 555 (2007); *Ashcroft v Iqbal*, 129 S.Ct. 1937 (2009).   Citing to Fed.R.Civ.P. 8, the Nestels argue that count III should be dismissed because Ohio Farmers failed to explain why it believes the Nestels knew S.C. Nestel faced liability for breach of contractual obligations on the Wal-Mart project; hence the amended complaint fails to provide sufficient factual allegations to state a claim for relief that is plausible on its face.  In response, Ohio Farmers asserts that its allegations in count III state that  it received S.C. Nestel's financial statements and those records reflected that the Nestels received transfers of $2,494,771.00, and that a) the Nestels made the transfers with the intent to hinder, delay, or defraud the creditors of S.C. Nestel, including Ohio Farmers, because the Nestels knew that S.C. Nestel faced liability in excess of $3,000,000.00 for its breach of contractual obligations on the WalMart project when they made the transfers; b)  the Nestels made the transfers without receiving a reasonably equivalent value in exchange and that the remaining assets of S.C. Nestel were unreasonably small in relation to the business or transaction and that S.C. Nestel intended to incur or believed or reasonably should have believed that S.C. Nestel would incur debts beyond its ability to pay as the debts became due because its net worth was less than its expected liability for breaching its contractual obligations on the Wal-Mart project; and c) the Nestels made the transfers without receiving reasonably equivalent value in exchange for them and that S.C. Nestel became insolvent as a result.  *See* amended complaint, ¶¶ 46- 47.

---

allegations in count III do iterate the language in Fla. Stat. §726.105(1)(a) and (b) and § 726.106, and state a claim that the Nestels violated these statutes.

17

Count III identifies the timing and amount of the Nestels' alleged fraudulent transfers, and alleges that the transfers were intended to defraud Plaintiff and S.C. Nestel's other creditors by transferring money from S.C. Nestel before the company satisfied its anticipated obligations for breaching its contractual obligations on the Wal-Mart project. In other words, Plaintiff asserts that the Nestels received financial payments from S.C. Nestel when they knew that the company faced substantial contractual liability to Wal-Mart. I find that count III of the amended complaint adequately states a plausible cause of action for fraudulent transfers against the Nestels. *See generally Akanthos Capital management, LLC v. CompuCredit Holdings Corp.*, 2011 WL 987353 (N.D. Ga. March 15, 2011) (construing similar Georgia fraudulent transfer act, finding that in analyzing whether plaintiff has actual intent to defraud, court may consider "badges of fraud" factors focused on debtor's state of mind and infer fraudulent intent from totality of circumstances); *Woodell v. TransFlorida Bank*, 717 So. 2d 108, 109-110 (Fla. 4th DCA 1998) (FUFTA sets forth certain "badges of fraud" which may give rise to a presumption of fraudulent intent). Moreover, I find the case before me distinguishable from *Feldkamp v. Long Bay Partners, LLC,* 2011 WL 693576, *13 (M.D. Fla. Feb. 18, 2011), a case cited by Ohio Farmers. In *Feldkamp*, the court dismissed the cause of action for fraudulent transfers because the allegations were "verbose and confusing," contained "extended argument," and failed to name the "insiders" to whom defendants fraudulently transferred assets.

### 6. Attorneys' fees claim

The Nestels seek to strike Ohio Farmers' demand for attorneys' fees based on their contention that the Contract does not entitle it to recover fees in the event of a breach of the Contract. In general, the recovery of attorneys' fees as damages or costs by prevailing party to an

18

action is allowed only when provided by statute or contract, or when a fund has been created and

brought into court.  *Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A.*, 941

F.Supp. 1182 (M.D. Fla 1996).  In *Coca-Cola*, the defendant sought to strike the plaintiff's

demand for attorneys' fees, and the plaintiff had not alleged in the amended complaint the basis

for its demand for attorneys' fees.  In that case, this Court found that certain warranty sections of

the purchase orders between the parties clearly provided for an award of attorneys' fees and

denied the motion to strike.  In this case, in the amended complaint, Ohio Farmers quotes the

applicable Contract provisions allegedly entitling it to attorneys fees.  These provisions state:

> Shareholders agree that in the event of a breach of any of the terms
> of this Agreement, all funds and the value of any property and any
> benefit received by the Shareholders in connection with such
> breach shall be held in trust by Shareholders for the benefit of
> Surety to be paid by Shareholders to Surety on demand in
> reimbursement of its loss.  Shareholders further agree to
> compensate Surety for any damage in the form of loss or otherwise,
> sustained by it and caused or contributed to by such breach.

Contract, ¶7.

The Contract defines "loss" to include:

>  any and all loss or expense of whatever kind, including interest,
> court costs and counsel fees which Surety incurs or sustains as a
> result of or in connection with any Bond furnished to Surety".

Contract, ¶5.  Moreover, the Contract is attached as Exhibit A to the amended complaint.

The Nestels claim that since this action is premised not on any bond, but instead on

alleged breaches of the Contract, the above-cited contractual provisions are inapplicable.  Ohio

Farmers responds that the fees incurred in this action are a result of and are incurred in

connection with the bonds Ohio Farmers issued on S.C. Nestel's behalf, and the fees also fall

within paragraph seven's description of "any damage in the form of loss or otherwise, sustained by [Ohio Farmers] and caused or contributed to by such breach."  At this juncture, I find it would be premature to bar attorneys' fees until the Contract can be properly interpreted during a later stage of this litigation.

*D. Conclusion*

For the reasons discussed above, it is hereby

RECOMMENDED:

1.  That the motion to dismiss amended complaint (doc. 16) be GRANTED with respect to the claims against Mareta Nestel, and DENIED in all other respects.

2.  That the motion to strike demand for attorneys' fees be DENIED.

IS IT SO REPORTED on June 1, 2011.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).